**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM THIMIOGIANIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:10CV820 RWS/LMB |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on petitioner's petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. This case was referred to the undersigned pursuant to

28 U.S.C. § 636(b) for a report and recommendation on dispositive matters and for

rulings on non-dispositive matters. Having reviewed the case, the undersigned

recommends that the petition be dismissed.

**Background**

Petitioner was charged with two counts of kidnapping, three counts of forcible

rape, three counts of forcible sodomy, and seven counts of armed criminal action.

Resp. Exh. B at 10. Petitioner pled not guilty by reason of mental disease or defect.

Id. at 18. A jury found petitioner guilty on all counts. Id. at 102-30. The court

sentenced petitioner in the aggregate to two consecutive life sentences plus fifteen years.  Id. at 153-61.

On direct appeal, petitioner raised two points: (1) that the trial court erred in failing to remove juror Anderson Williams for juror misconduct when it learned he did not disclose during voir dire that his two sisters were raped; and (2) that the trial court erred in discharging juror Lisa Hutchens and replacing her with an alternate juror after the jury retired to deliberate in the penalty phase, in violation of Mo. Rev. Stat. § 494.485 (2004).  Resp. Exh. F at 2.

The Missouri Court of Appeals for the Eastern District affirmed the conviction and sentence in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision.  Id.  In its decision, the state appellate court found the facts as follows:

> During voir dire, the following question was asked by the State of the venirepanel relevant to [petitioner's first] claim, "Is anybody going to have a problem hearing testimony about rape or about sexual assault?" In response, several members of the venirepanel approached the bench to discuss the topic in private with the attorneys and the trial court. Venireperson Williams did not approach the bench.
>
> Near the end of the State's voir dire, the State asked:
>
>> I know I've asked you a lot of things and I know some of you have come up to the sidebar or kind of gotten our attention and said, you know, now that I've thought a little bit about something you said an hour ago, Mr. Lasater, it

bothered me at lunchtime or, you know what, I thought of something else that you're asking a lot of things, because what we're really interested in, come back to what I started with, is getting a fair trial for Mr. Thimiogianis and for the [S]tate, for the victims, for everybody, for the community, so is there anything that is kind of sitting in your mind saying, you know, Lasater kind of asked this but maybe it's not too specific?  Is there anything's [sic] that's bothering anybody that they want me to know about?

Venireperson Williams did not respond to this question and ultimately served on the jury.

During a break of the jury deliberation on the penalty phase, the following proceedings were had outside the jury:

> The Court: We'll be on record.  During this break, Juror No. 11, Anderson Williams, came up to my bailiff and said, ["]I can't – I can't take this anymore, I can't deal with this, I can't make a decision in this case, I've had two sisters that were raped.["]
> [State]: Well–
> [Defendant's attorney]: Two sisters.
> [State]: –we're at a situation where tough.
> The Court: Go ahead.
> [State]: You know, everybody was asked about these questions during jury selection and, you know, he's been deliberating, we don't have an alternate, and so they all twelve go back in and deliberate and, you know, if they can't do what they got to do, whatever, but they all go in.
> The Court: Mr. Cady [Defendant's attorney]?
> [Defendant's attorney]: Judge, I'm not sure I have anything to add.
> The Court: The Court instructed the bailiff to tell Mr. Anderson Williams that his concerns were noted by the Court, and it's the Court's intention to just leave it at that.

I'm going to put them back in the box here, matter of fact just about in a minute or two, and direct that they return to the jury room for further deliberations on the punishment phase.

Any further comment or objection, Mr. Lasater [prosecutor]?

[State]: No, sir.

The Court: Mr. Cady?

[Defendant's attorney]: No, your Honor.

The Court: Okay. That'll end our transcript in the matter.

The jury returned to deliberate on punishment and the court went back on record a few minutes later:

The Court: Okay, we'll be on the record.

At 12:52 PM, the Court received the following written communication from Juror Anderson Williams: Quote, I would like to be take of the jury, end quote.

The Court's inclination would be to send the following written communication back to the jury and Mr. Williams: Quote, You will be guided by your recollection of the evidence and the instructions the Court has given you. The Court cannot instruct you further.

Any comment or objection about that procedure, Mr. Lasater?

[State]: Judge, I think you just need to make a flat-out statement to Mr. Williams that he cannot be removed from the jury and needs to continue deliberating.

The Court: Mr. Cady?

[Defendant's attorney]: Judge, I think the statement as the Court has indicated its intention to give is the proper statement, and on behalf of the defense, we would ask that that be the response.

The Court: Mr. Lasater, I would like to become more expansive with regard to my response to Mr. Williams, but I'm afraid I might be inviting error if I do so.

[State]: I understand.

The Court: Your suggestion is noted. I think it's probably well taken, but the Court's response will be as the Court stated before, once again, quote, You will be guided by your recollection of the evidence and the instructions the Court has given to you. The Court cannot instruct you further, end quote.

Let the record reflect that this response will be sent back to Mr. Williams. I'm going to attach this response to his request so it'll be clear as what this response applies to.

The jury subsequently returned its verdicts on sentencing.

. . .

After closing arguments in the penalty phase, the following occurred, relevant to [petitioner's second] point:

The Court: Okay. At this time, Mr. Audraine and Mr. Wernle [alternate jurors], I'll ask you, if you would, if you'd remain here in the courtroom with me.

Miss Bugby is the foreperson. I would ask you and your fellow jurors at this time to return to the jury room for deliberations upon your verdict as to punishment.

If you want to take a break for lunch, if you want to take a break to stretch your legs, if you would make that desire known in writing, pass it to my bailiff, he'll pass it to me, and we'll see that those arrangements are made. My bailiff will be giving you verdict forms for your use.

You may proceed to your jury room.

. . .

(The following proceedings were had in open court outside the presence of the jury:)

The Court: We're in the courtroom. Juror Lisa R. Hutchens is in the courtroom with us..

Miss Hutchens, my bailiff has informed me that before you entered the jury room for deliberations on the punishment phase, you indicated to him that you–basically you said, as I understand it, I can't do this. You were reluctant to go into the jury room and you asked my bailiff if you could be excused; is that correct?

Juror Hutchens: Yes.

The Court: All right. Miss Hutchens, without telling me anything that went on in prior deliberations with the jury–that is confidential, it's only to be known by the jurors–could you explain to the Court the reasons and the feelings you have that led to the statements that you've made to my bailiff?

Juror Hutchens: I guess it's just a personal–

The Court: I'm having a little trouble hearing you?

Juror Hutchens: I guess it's just personal. You know, can I – I don't know that I can live with myself. I can't make that decision. I– I guess I went into it not fully understanding what the full extent of the consequences would be, and I can't – I can't be a part of sending someone. I can't do it.

The Court: Miss Hutchens, I'm going to acknowledge that this is something that is very difficult to do. As a matter of fact, I'm guessing probably for all the jurors it's probably going to be one of the more difficult things that they've ever had to contend with. I will tell you, and I mean this in a very respectful way, I'm glad that it's a difficult decision. Anytime that we're dealing with an individual's life or liberty, it should be a very serious consideration and be taken extremely, extremely seriously, so I certainly can understand and appreciate and feel the difficulty that you're having. It's entirely appropriate.

I would point out to you that just as in the first phase, you would have an opportunity to discuss this with your fellow jurors, to voice your own opinion, to listen to theirs, and the jury would hopefully come to a unanimous verdict on this issue.

Having said that, do you feel that it will be possible for you to participate in those deliberations?
Juror Hutchens: No.
The Court: I'm sorry?
Juror Hutchens: No.
The Court: You would be able to participate in those deliberations?
Juror Hutchens: These here today?
The Court: Yes.
Juror Hutchens: No, I don't want–I can't.
The Court: All right. It would be impossible for you?
Juror Hutchens: It would be impossible.
The Court: Okay. All right. Attorneys, approach the sidebar.

At the sidebar, Defendant's attorney commented on whether Juror Hutchens was able to deliberate during the guilt phase, but made no objection to the removal of Juror Hutchens or the replacement of Juror Hutchens with the alternate juror.

Resp. Exh. F at 3-8.

The Missouri Court of Appeals reviewed both points for plain error. Id. at 5, 8. As to petitioner's first point, the court found "no evidence that the trial court should have excused Juror Williams from the jury." Id. at 6. Juror Williams was never asked whether he was related to someone who was sexually assaulted, and the court found that he "cannot be faulted for failing to disclose that his sisters were raped when the question was never asked of the venirepanel." Id. Accordingly, the appellate court found that the "trial court did not plainly err in not removing juror Williams from the jury." Id. at 7. As to petitioner's second point, the court found that the use of the

alternate juror during the penalty phase did not violate Mo. Rev. Stat. § 494.485 (2004).  Id. at 9-10.  The Missouri Court of Appeals issued its mandate on May 11, 2007.  Resp. Exh. G.

Petitioner, through counsel, filed a timely motion for postconviction relief.  Resp. Exh. I at 3-16.  Petitioner argued that trial counsel was ineffective for (1) failing to conduct a proper voir dire, (2) failing to object to juror misconduct and to move for a mistrial during the deliberation process, and (3) failing to raise the issue of juror misconduct in the motion for a new trial.  Id. at 6-7.  The motion court denied the motion after holding an evidentiary hearing.  Id. at 63-72.

Petitioner raised the same three claims of ineffective assistance of counsel in his postconviction appeal.  Resp. Exh. L at 2.  The Missouri Court of Appeals for the Eastern District affirmed the motion court's decision in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for its decision. Resp. Exh. L.  The state appellate court applied the ineffective assistance of counsel claim standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and agreed with the motion court that petitioner had failed to show either that counsel's performance was unreasonable or that petitioner was prejudiced.  Id. at 3-8.  The Missouri Court of Appeals issued its mandate on May 14, 2009.  Resp. Exh. M.

Petitioner timely filed the instant petition for writ of habeas corpus on May 5, 2010. Petitioner is currently confined in the Potosi Correctional Center, where Troy Steele is the Warden.

## Grounds for Relief

1.     The trial court erred in failing to remove juror Anderson Williams for juror misconduct when it learned that he had failed to disclose that his sisters had been raped, denying petitioner his right to a fair and impartial jury.

2.     The trial court erred in excusing juror Hutchens and replacing her with   alternate juror Audrain in violation of Mo. Rev. Stat. § 495.485.

3.     Trial counsel was ineffective for failing to ask the venirepanel whether they or any member of their family had been a victim of rape or sexual assault.

4.     Trial counsel was ineffective for failing to object to juror Williams' alleged misconduct and for failing to move for a mistrial during the deliberation process.

## Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

**Discussion**

1.    Ground One

In ground one of the petition, petitioner argues that the trial court erred in failing to remove juror Anderson Williams for juror misconduct when it learned that he had failed to disclose that his sisters had been raped, denying petitioner his right to a fair

and impartial jury. Respondent argues that Williams did not commit juror misconduct because he was never directly asked if he or anyone in his family had been raped.

The Missouri Court of Appeals reviewed this claim for plain error because petitioner did not make an objection to Williams remaining on the jury. Resp. Exh. F at 5. Plain error review entails "examining whether the allegation of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." Id. (quoting State v. Hagan, 113 S.W.3d 260, 267 (Mo. Ct. App. 2003)). The appellate court found no plain error where Williams failed to answer a question he was not asked.

The United States Court of Appeals for the Eighth Circuit has noted there is a "split of authority in [the] circuit about whether [a state appellate court's] plain error review 'cures' [any] procedural default" that may result from such review, see Shelton v. Purkett, 563 F.3d 404, 408 (8th Cir. 2009), and about "the appropriateness of plain-error review in the habeas context," see Toua Hong Chang v. Minnesota, 521 F.3d 828, 832 n.3 (8th Cir. 2008). In both of these cases, the Eighth Circuit applied the AEDPA's standard of review to the court's consideration of the merits of the claims that had been considered by the state courts under plain error review only. Shelton, 563 F.3d at 407-08 (not resolving the procedural default issues and concluding, based on the assumption the claims were subject to review, that "the AEDPA mandates a

deferential review of a state court decision"); <u>Toua Hong Chang</u>, 521 F.3d at 831-33

(declining to apply plain-error analysis and instead applying analysis under <u>Brecht v.</u>

<u>Abrahamson</u>, 507 U.S. 619 (1993), which "subsumes" the AEDPA test). Based on

this case law, the Court will apply the AEDPA's standard to the consideration of the

merits of ground one.

The appellate court's decision was not contrary to or an unreasonable application

of clearly established federal law. It is clear that Williams was not asked whether any

of his family members had been raped. Williams could not have deceitfully withheld

that fact from the court if he had not been asked the question. Petitioner identifies no

constitutional defect in this claim. As a result, petitioner is not entitled to relief on

ground one of the petition.

2.     <u>Ground Two</u>

In ground two of the petition, petitioner argues that the trial court erred in

excusing juror Hutchens and replacing her with an alternate juror Audrain in violation

of Mo. Rev. Stat. § 495.485. Respondent argues that this claim involves only state law

and so is not cognizable in these proceedings.

Respondent is correct. In his appellate brief, petitioner framed this issue as a

matter of state law, Resp. Exh. C at 38-43, and the appellate court treated this matter

as one under state law, Resp. Exh. F at 7. Under 28 U.S.C. § 2254(a), a district court

may only entertain a petition for writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." In other words, grounds that do not state a constitutional issue are not cognizable in a federal habeas petition. E.g. Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997). Ground two does not state a constitutional issue and is not cognizable. As a result, petitioner is not entitled to relief on ground two of the petition.

3.      Ground Three

In ground three of the petition, petitioner argues that trial counsel was ineffective for failing to ask the venirepanel whether they or any member of their family had been a victim of rape or sexual assault. Respondent argues that counsel reasonably relied on the questions that had been asked of the venirepanel and was not ineffective.

The Missouri Court of Appeals analyzed the issue under Strickland and found that "[w]hile hindsight suggests that it may have been ideal to ask questions about personal or family experience with sexual assault, it was objectively reasonable at the time for counsel to conclude that the State had adequately covered the issue in voir dire." Resp. Exh. L at 5. The appellate court stated:

> The State inquired whether anyone would have a problem hearing testimony about rape or sexual assault, and nine venirepersons responded although Williams did not. The State then raised the issue of the venirepersons' prior contacts with law enforcement and the contacts of close family members or friends. Williams did not respond. The State

narrowed its inquiry and asked whether anyone had been a crime victim, and five venirepersons responded. Finally, while emphasizing the necessity of a fair trial, the State asked whether anything was bothering any of the venirepersons that they believed the State should know about, anything the state had "kind of asked" but perhaps was "not too specific" in asking. Williams did not respond to this question either.

"A defendant is not entitled to a perfect trial nor to clairvoyant trial counsel." Nave v. State, 757 S.W.2d 249, 251 (Mo. App. E.D. 1988). We conclude that the State's voir dire was sufficient so that counsel could reasonably have expected the questions to draw forth any venireperson, including Williams, who at the time believed that his or her personal or family experience was such that he or she could not fairly and impartially hear and consider the evidence in [petitioner's] case. [Petitioner] has failed to satisfy the first element of the Strickland test requiring him to show that counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney.

Id.

To prevail on an ineffective assistance of counsel claim in a § 2254 case, a

petitioner

must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

When the prosecutor asked the venirepanel "Is anybody going to have a problem

hearing testimony about rape or about sexual assault," Resp. Exh. A at 59, several

jurors came forward stating that either themselves or members of their family were raped or molested. Id. at 60, 64, 70, 78, 87. Others said they had a friend or acquaintance who had been sexually assaulted. Id. at 84, 89, 94.

During the evidentiary hearing on petitioner's motion for postconviction relief, petitioner's trial counsel testified that it was part of his strategy to find out from the potential jurors whether they had persons close to them who had been victims of rape or sexual assault, but counsel stated that he felt the issue had been adequately addressed by the state's voir dire. Resp. Exh. H at 6-7. Counsel noted that several of the prospective jurors had approached the sidebar and expressed to the court that they had family members or acquaintances who had been raped or assaulted. Id. at 7-8.

The Missouri Court of Appeals' decision that counsel could reasonably have expected the state's voir dire to elicit such responses from the entire venirepanel was not an unreasonable application of Strickland. Based on the prosecutor's questions and the other venirepersons' responses to those questions, this Court believes that counsel acted reasonably in relying on the state's voir dire. As a result, petitioner is not entitled to relief on ground three of the petition.

4.    Ground Four

In ground four of the petition, petitioner argus that trial counsel was ineffective for failing to object to juror Williams' alleged misconduct and for failing to move for

a mistrial during the deliberation process. Respondent argues that the objection would have been meritless and counsel cannot have been ineffective for failing to raise a meritless objection.

The Missouri Court of Appeals found that trial counsel was not ineffective "[b]ecause Williams was not guilty of juror misconduct and because trial counsel's decision not to object to Williams's continued service on the jury or to move for a mistrial was the result of reasonable trial strategy . . . ." Resp. Exh. L at 7.

As is stated above, petitioner's contention that Williams was guilty of juror misconduct is meritless. Counsel cannot have been ineffective for failing to object to juror misconduct that did not occur. The decision of the Missouri Court of Appeals is not contrary to or an unreasonable application of clearly established federal law. As a result, petitioner is not entitled to relief on ground four of the petition.

**Conclusion**

For these reasons, the Court recommends that habeas relief be denied. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus,

the Court further recommends that no certificate of appealability be issued.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed without further proceedings.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation.  Fail to timely file objections may result in waiver of the right to appeal questions of fact.  Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this   31st  day of July, 2013.


_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE